REBECCA B. ALDRICH, administratrix, *vs.* INHABITANTS OF BLACKSTONE.

Worcester.   Oct. 2, 1879. — Jan. 24, 1880.   ENDICOTT & LORD, JJ., absent.

Under the Gen. Sts. *c.* 70, the overseers of the poor of a town have authority to bind the town by a contract for support to be furnished in another town to a pauper whose settlement is in the former town, but who, at the time the contract for his support is made, is too ill to be removed to the town of his settlement.

A contract made on the Lord's day by the overseers of a town for the relief of a sick pauper is not in violation of the Gen. Sts. *c.* 84, § 1.

CONTRACT.   The declaration alleged that one George Freeman, a poor and indigent person, having a settlement in and being

chargeable to the defendant town, fell into distress and was afflicted with a dangerous and loathsome disease, which prevented his removal and required extra care and nursing, at the house of the plaintiff's intestate; that the overseers of the poor of the defendant town assumed in its behalf the care, relief and support of Freeman, and in behalf of the defendant contracted with the plaintiff's intestate to take the care of, and to support and nurse the said Freeman, for such compensation as should be reasonable and such as the services required and the said support should be fairly worth, and for such expense or pecuniary loss as might be incurred in the premises; that the plaintiff's intestate in his lifetime did support and care for Freeman, under and by virtue of said contract, during and through said sickness, and did incur expense in such service, support and care, the items of which were set forth in detail, amounting in all to $712, from July 23 to August 27, 1877. Trial and verdict for the plaintiff for $265 in the Superior Court, before *Dewey*, J., to whose rulings the defendant alleged exceptions, the material parts of which appear in the opinion.

*J. Hopkins,* (*F. N. Thayer* with him,) for the defendant.

*W. S. B. Hopkins,* for the plaintiff.

MORTON, J. In this case, the following facts are established by the verdict. On July 23, 1877, one Freeman, who was a pauper having his settlement in the town of Blackstone, and who was then in the employ of Aldrich, the plaintiff's intestate, who lived in Uxbridge, was taken sick with a dangerous disease. Aldrich furnished him the necessary relief, and, in the week following, notified the overseers of the poor of Uxbridge of the condition of Freeman, and that he stood in need of relief. On August 4 following, the overseers of Uxbridge sent a notice in due form to the overseers of the poor of the town of Blackstone, who, on August 5, which was Sunday, went to the house of Aldrich in Uxbridge, examined the condition of the pauper, found that he was so dangerously sick that he could not be removed, and thereupon made the contract for his relief and support upon which this suit is brought. The principal question is, whether the overseers had the power to make this contract so as to bind the town.

The provisions of our laws as to the support of paupers are mainly contained in the Gen. Sts. *c.* 70. By § 1, it is made the duty of every city and town to "relieve and support all poor and indigent persons lawfully settled therein, whenever they stand in need thereof." By § 2, it is provided that "the overseers of the poor shall have the care and oversight of all such poor and indigent persons so long as they remain at the charge of their respective cities or towns, and shall see that they are suitably relieved, supported and employed, either in the workhouse or almshouse, or in such other manner as the city or town directs, or otherwise at the discretion of said overseers." By the subsequent provisions, it is made the duty of the overseers to furnish relief to all persons found in their town, having settlements in other places, when they fall into distress and stand in need of immediate relief, in which case the expenses incurred may be recovered of the town of the pauper's settlement, if notice is duly given, except that the town liable is not required to pay more than one dollar a week for the support, if it causes the pauper to be removed within thirty days after receiving such notice. Gen. Sts, *c.* 70, §§ 12, 14. By these provisions, the overseers are made a board of public officers, who have the care and oversight of the paupers, and, by necessary implication, they have the power to bind their town by any contracts made within the scope of their authority.

By § 1, it is the immediate duty of a town to relieve its paupers whenever they stand in need thereof. This duty, in the case of paupers who fall into distress in another town, is not postponed by the provisions of § 14, the object of which is to furnish a reasonable time, after notice, to make inquiry as to the settlement of the pauper and to take measures for his removal, and in the meanwhile to limit the liability of the town. In the case at bar, when the overseers of Blackstone received notice that Freeman, known to be one of their paupers, had fallen into distress in Uxbridge, it was their duty to furnish him relief at once. It would have been unjust to lie by for thirty days, and thus throw upon the town of Uxbridge the expense, over one dollar per week, of supporting the pauper, which under the circumstances of the case must necessarily be considerable. The overseers of Blackstone recognized this duty, and at once took the care and oversight

of the pauper. If they had immediately removed him to Blackstone and made provisions for his relief there, it cannot be doubted that the town would be liable for the expenses, however large. But they found that he could not be moved without danger to his life, and thereupon they made a contract for his support in Uxbridge.

We are of opinion that this contract was made in the performance of their duties, and is therefore within the scope of their authority and binding upon the town. The authority given to overseers is very broad; they are to see that the poor are suitably relieved, either in the workhouse or almshouse or in such other manner as the town directs, " or otherwise at the discretion of said overseers." In this case, the only suitable relief possible was that furnished by the overseers. There is nothing in the statute which expressly or by implication restricts the power of the overseers to furnishing relief within the limits of their town. The right and propriety of supporting paupers outside the limits of the town, if within the Commonwealth, under special circumstances is recognized in several cases in this court. *Marlborough* v. *Rutland*, 11 Mass. 483. *Smith* v. *Colerain*, 9 Met. 492. *Smith* v. *Peabody*, 106 Mass. 262. In the case last cited, it was adjudicated that the overseers were not bound to retain the poor under their charge within the city limits, but might provide for them elsewhere in a suitable place within the limits of the Commonwealth. The question of the liability of the city for the support of the paupers elsewhere was not directly raised, but the necessary inference from the decision is that it would be so liable.

The defendant also contends, that, as the contract sued on was made on Sunday, it was in violation of the Gen. Sts. *c.* 84, § 1, and therefore cannot be enforced. But it was a work of necessity or charity within the exception of the statute. It was the duty of the overseers to make immediate provision for the relief of a sick and suffering pauper under their care, and the performance of that duty was not a violation of the letter or spirit of the statute. *Exceptions overruled.*