ARTHUR KING's (dependent's) CASE.

Suffolk.    January 11, 1915. — February 26, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Workmen's Compensation Act. Evidence,* Presumptions and burden of proof.

*It seems* that under St. 1911, c. 751, Part V, § 2, before it was amended by St. 1914, c. 708, § 13, the employment of a workman for a single day, with no agreement or understanding express or implied extending the service beyond the close of the day's work, was "but casual," so that, if he was killed in the course of his employment on that day, his dependent widow was not entitled to receive an award for his death under the provisions of the workmen's compensation act.

Where in a record of an appeal under the workmen's compensation act it was stated that at the request of the insurer certain "excerpts from the transcript of the evidence" were attached to the decision of the Industrial Accident Board it was *held,* that it could not be assumed that these excerpts stated all the material evidence on the questions presented to this court, and therefore this court could not say that as matter of law there was no evidence warranting a certain finding of the Industrial Accident Board, although the evidence reported in the excerpts did not warrant the finding.

In proceedings before the Industrial Accident Board, in which the dependent widow of a deceased employee seeks to obtain compensation for her husband's death under the provisions of the workmen's compensation act, the burden of proof is upon the dependent to satisfy the board that the employee's service was such as to entitle her to compensation for his death.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board relating to compensation to be paid to Catherine King as the dependent widow of Arthur King.

The appeal was heard in the Superior Court by *Wait,* J.    It appeared that the injury that resulted in King's death was sustained when he was working for one Deguio, who was a subcon-

tractor under a contract with the Boston Brick Company, a corporation, which was a subscriber insured in accordance with the provisions of the workmen's compensation act. The report of the Industrial Accident Board contained the following finding: "King was a laborer, he was not hired to do any particular job of work, but was hired by the day, like many men who are employed in day labor, and although the evidence shows, and we find, that he was hired for a single day, the evidence does not show that his employment might not have continued for a longer period, provided he and his employer agreed thereto. In other words, we are not satisfied, on the evidence, that King might not have worked for Deguio for a longer period than a day, provided there was work for him to do and the terms were mutually satisfactory. It seems to us that the burden is upon the insurer to bring King within the exception, and we are not satisfied that the burden of proof has been sustained in this respect. We therefore find and rule that the employment of King was not casual."

The insurer asked the board to make certain rulings, of which the fifth was as follows: "5. King's employment by the Boston Brick Company if any existed was casual. King's employment by the Boston Brick Company if it existed at all was a casual employment and not in the usual course of the trade and business of the alleged employer."

The board refused to make this ruling, and made the following finding: "As to the fifth request, we find that King's employment was not casual, and that the usual course of the Boston Brick Company was to deliver as well as manufacture bricks, and at the time of his injury King was [employed] in the usual course of the trade and business of the Boston Brick Company."

The board found that the employee King was in the employ of Deguio, subcontractor of the Boston Brick Company, at the time of his injury; that the injury arose out of and in the course of his employment; that Deguio was required by the terms of his contract to deliver bricks to the customers of the Boston Brick Company, the latter being a subscriber and insured under the act; that the insurer was required under the provisions of St. 1911, c. 751, Part III, § 17, to pay compensation to the widow of the employee, Catherine King, at the rate of $6.50 a

week for a period of three hundred weeks from October 8, 1913, the date of the injury.

The report of the board concluded with these words: "At the request of the insurer excerpts from the transcript of the evidence are attached hereto." After the attestation of the report came the following statement: "The following excerpts from the transcript of the evidence are attached at the request of the insurer:" Here followed a copy of certain portions of the evidence before the Industrial Accident Board with an attestation by the secretary of the board that the copy was a true one.

By order of the judge a decree was entered in accordance with the finding of the Industrial Accident Board, awarding to Catherine King as the dependent widow of Arthur King for the period of three hundred weeks from October 8, 1913, a weekly compensation of $6.50. The insurer appealed.

*G. G. Bacon,* for the insurer.

*W. Hartstone,* for the dependent widow.

BRALEY, J. The findings of the Industrial Accident Board, that the employee at the time of the accident which caused his death, while delivering brick in the course of his employment, was the servant of Deguio a subcontractor of the Boston Brick Company, a subscriber of the insurer, were warranted by the evidence. *Morgan* v. *Smith,* 159 Mass. 570. *Driscoll* v. *Towle,* 181 Mass. 416, 418. *Delory* v. *Blodgett,* 185 Mass. 126. *Oulighan* v. *Butler,* 189 Mass. 287, 290, 291. *Haskell* v. *Boston District Messenger Co.* 190 Mass. 189, 193. *Bowie* v. *Coffin Valve Co.* 200 Mass. 571, 578. It would follow under St. 1911, c. 751, Part III, § 17, and §§ 6, 7 of Part II, that the dependent, the employee's widow, would be entitled to the compensation awarded. But, as the accident happened while § 2 of Part V, since amended by St. 1914, c. 708, § 13, was in force, the insurer contends, that, not only was the further finding that the employee's service was not casual unwarranted, but the ruling that the burden of proof rested on it to show the scope of his employment was wrong.

If it be assumed that the "excerpts from the transcript of the evidence" attached to the decision at the insurer's request state all the evidence on this question, the employment was but for a single day. Under the most favorable interpretation for the

dependent there was no agreement or understanding express or implied extending the service beyond the close of the day's work, and the present case cannot be distinguished in principle from *Gaynor's Case,* 217 Mass. 86, and *Cheevers's Case,* 219 Mass. 244, where it was held that, the employment being casual, the employee did not come within the statute.

The assumption, however, cannot be made. It is only "excerpts" which are contained in the record, and it being impossible to say as matter of law that there was no evidence warranting the finding, the fifth ruling requested could not have been given. *Bentley's Case,* 217 Mass. 79, 80.

The burden of proof, however, did not shift. *Carroll* v. *Boston Elevated Railway,* 200 Mass. 527. The dependent was required to satisfy the board that the employee's service was such as to entitle her to compensation for his death. *New Bedford* v. *Hingham,* 117 Mass. 445. *Thackway* v. *Connelly & Sons,* 3 B. W. C. C. 7. *Barnabas* v. *Bersham Colliery Co.* 3. B. W. C. C. 216. The contrary ruling having been erroneous we are obliged to reverse the decree.

*So ordered.*